UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20904-CR-UNGARO/O'SULLIVAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DANNY ANGEL RODRIGUEZ,

      Defendant.

_____/

## ORDER

THIS MATTER is before the Court on the Motion to Compel[ ] Government to Release Exculpatory Evidence, That They've Admitted to Possessing (DE# 356, 5/8/19) and the Motion for Hearing on Discovery Violations: Pro Se Defendant is Unjust Caught In – (Endless Finger-Pointing) Between Defense Counsel and Government (DE# 365, 5/14/19).

The instant motions were filed by the defendant pro se. Pro se filings are liberally construed. Winthrop-Redin v. United States, 767 F.3d 1210, 1215 (11th Cir. 2014).

## BACKGROUND

On May 8, 2019, the defendant filed a Motion to Compel[ ] Government to Release Exculpatory Evidence, That They've Admitted to Possessing (DE# 356, 5/8/19). The government filed its response on May 10, 2019. See Government's Response to Defendant's Motion to Compel Government to Release Exculpatory Evidence that They've Admitted to Possessing [D.E. 356] (DE# 364, 5/10/19). No reply was filed. However, the defendant filed a motion on May 14, 2019, which addressed the government's response. See Motion for Hearing on Discovery Violations: Pro Se

Defendant is Unjust Caught In – (Endless Finger-Pointing) Between Defense Counsel and Government (DE# 365, 5/14/19). The undersigned will treat the Motion (DE# 365) as both its own motion and a reply in support of the defendant's Motion (DE# 356).

On May 14, 2019, the defendant filed a Motion for Hearing on Discovery Violations: Pro Se Defendant is Unjust Caught In – (Endless Finger-Pointing) Between Defense Counsel and Government (DE# 365, 5/14/19). On May 21, 2019, the defendant filed a supplement. See Re: Supplement to DE 365, Reply to Government's Response to Pro[ S]e Motion to Compel Gov. to Release Exculpatory Evidence[ ] and Motion for Leave (DE# 378, 5/22/19). The government filed its response on May 21, 2019. See Government's Response to Defendant's Pro-Se Motion for Hearing on Discovery Violations [D.E. 365] (DE# 376, 5/21/19). The defendant filed a reply on May 23, 2019. See Defendant[']s Reply to Government[']s Response [DE 376]; Re: Hearing on Discovery Violation [DE# 365] (DE# 388, 5/23/19).

## ANALYSIS

1.      **Motion to Compel[ ] Government to Release Exculpatory Evidence, That They've Admitted to Possessing (DE# 356, 5/8/19)**

The defendant seeks to compel all documentary evidence and video surveillance obtained by the government from the Ives Diary Self Storage facility. Motion (DE# 356 at 2).

The defendant learned that the government had "obtained all documentary evidence and video surveillance available" of the storage unit[1] from a February 7, 2018

---

[1] In the instant case, the parties have used the term "storage unit" and "warehouse" interchangeably. To add to the confusion, there is also another facility, referred to as a "warehouse," which was used by co-conspirator Roy Kahn. The

email sent by AUSA Maxwell to the defendant's then-counsel Marc Seitles. See Motion (DE# 356 at 1) (referencing Email Dated 2/7/2018 (DE# 301 at 13, 4/2/19)). The defendant states that he learned from a private investigator that the facility where the storage unit was located kept "a comput[e]rize[d] log of every time the storage unit was accessed" (hereinafter "activity log") and that the activity log was provided to the government on February 7, 2018. Id. at 1. The defendant further states that the government has never made the activity log available to the defendant. Id. The defendant notes that in multiple hearings, the government falsely represented that the defendant visited the storage unit on September 26, 2017 and that the undersigned relied on the government's representation of the defendant's September 26, 2017 visit to the storage unit in the undersigned's Report and Recommendations on the defendant's motion to suppress and the defendant's objections to the PSI. Id. at 1 n.1.

In its response, the government asserts that it "provided the [activity] log and the rental documents for the storage unit [to Ana Davide] as early as July 30, 2018" and possibly even before that date.[2] Response (DE# 364 at 1). Attached to the government's motion are exhibits of the documents the government states it provided to the defendant's now stand-by counsel, Ms. Davide, on July 30, 2018, including the

_____

defendant helped Mr. Kahn by clearing out that warehouse and "turning it in" around July 2017, approximately two or three months before the Title III intercepted telephone calls.

[2] The government maintains that on multiple occasions, Ms. Davide requested documents from the government that the government had already produced to her and that, as courtesy, the government would again provide the requested documents. Government's Response (DE# 364 at 2 n.2). The government believes that the activity log and rental documents for the storage unit were "initially provided prior to July 30, 2018, but [the government was] still reviewing the initial discovery response and email archives." Id. at 1 n.1.

activity log sought by the defendant.

Although the defendant did not file a reply, the defendant did file a motion on May 14, 2019 which addressed the government's response. See Motion for Hearing on Discovery Violations: Pro Se Defendant is Unjust Caught In – (Endless Finger-Pointing) Between Defense Counsel and Government (DE# 365, 5/14/19). The Court will treat this Motion (DE# 365) as both its own motion and a reply in support of the defendant's Motion (DE# 356).

The defendant notes that Exhibit C to the Government's Response (DE# 364) (the activity log) "provide[s], in part, the [e]xculpatory evidence Defendant sought." Defendant's Motion (DE# 365 at 1). Specifically, the defendant notes that the activity log (Exhibit C) "debunks the Government['s] narrative through critical proceedings i.e. [the suppression hearing and the hearing on the defendant's objections to the PSI]" that "the Defendant was on his way to the Said Storage Unit to make or pick up 10 sheets [of paper] on 9/26/2017" because the activity log shows that no one accessed the storage unit on that date. Id. The defendant also states that the government withheld this evidence (the activity log) until July 30, 2018, "several days after the Suppression Hearing." Id.

The defendant seeks to compel all documentary evidence and video surveillance obtained by the government from the Ives Diary Self Storage facility. Motion (DE# 356 at 2). In another filing the government states that there is no video surveillance of the storage unit and the February 7, 2018 email stating otherwise is inaccurate. See Government's Response (DE# 376 at 1). As to the documentary evidence, the government states that it provided this evidence to Ms. Davide on July 30, 2018, and

4

possibly before that date.

The video surveillance does not exist. The defendant has now received the documentary evidence he sought to compel. The defendant's Motion (DE# 356) is **DENIED as moot**.[3] The Court will address below the defendant's argument that the activity log "debunks" the government's narrative that the defendant went to the storage unit on September 26, 2017.

**2.     Motion for Hearing on Discovery Violations: Pro Se Defendant is Unjust Caught In – (Endless Finger-Pointing) Between Defense Counsel and Government (DE# 365, 5/14/19)**

The defendant seeks to obtain the video surveillance of the storage unit, which the government stated was in its possession in the February 7, 2018 email[4] sent by AUSA Maxwell to the defendant's then-counsel Marc Seitles. Motion (DE# 365 at 2). The defendant seeks an evidentiary hearing to address the government's alleged discovery violations concerning the surveillance video and the February 7, 2018 email.

---

[3] The Court notes that the defendant has issued a Rule 17(c) subpoena duces tecum to Ives Dairy Self Storage. See Order Granting Motion for Rule 17(c) Subpoena Duces Tecum (DE# 383 at 1, 5/22/19). Thus, the defendant will also receive this evidence directly from that entity when it responds to the subpoena.

[4] The defendant also states that he and Ms. Davide did not learn of "the February 7, 2018 email communication between Mrs[.] Maxwell and Mr[.] Seitles" until "after the December 12, 2018 Evidentiary Hearings." Defendant's Reply (DE# 388 at 2). This statement cannot be true because the government filed a copy of the February 7, 2018 email (DE# 99-1) on July 26, 2018 as an exhibit to its response in opposition to the defendant's motion to suppress. This email was also admitted into evidence as Defendant's Exhibit 2 at the July 27, 2018 suppression hearing. See Defendant's Exhibit List (DE# 105 at 5-7, 7/30/18). The defendant even acknowledges in his reply that the government discussed the February 7, 2018 email at the suppression hearing. See Defendant's Reply (DE# 388 at 1 n.1). Thus, the defendant and Ms. Davide could not have learned of the February 7, 2018 email for the first time "after December 12, 2018 Evidentiary Hearings." Defendant's Reply (DE# 388 at 2.)

Motion (DE# 365 at 1). The defendant also seeks to re-open the suppression hearing and the evidentiary hearing on the defendant's objections to the PSI based on the activity log, the Bureau of Prisons ("BOP") telephone records and the BOP visitation log. See Supplement (DE# 378 at 2) (stating that the defendant moves for leave to appeal the order denying the motion to suppress); Reply (DE# 388 at 3) (stating that Agent Giroux lied at the suppression hearing and at the evidentiary hearing on the defendant's objections to the PSI); Id. at 4 (asking the court for a new suppression hearing or that the defendant's motion to suppress be granted). In a supplement, the defendant argues that the government would not have been able to obtain a search warrant because it would have been based on a lie tying the defendant to the storage unit. See Supplement (DE# 378 at 1).

The Court will address these arguments in turn.

a.    **Video Surveillance and Request for Evidentiary Hearing on the Government's Alleged Discovery Violations**

As previously noted, the government states that the video surveillance of the storage unit referenced in Ms. Maxwell's February 7, 2018 email to Mr. Seitles does not exist. See Government's Response (DE# 376 at 1). The government explains that AUSA Maxwell "was mistaken about the agents having obtained a video and this misunderstanding was discussed with the Defendant's attorney Frank Quintero shortly after the email was sent." Id. at 2. Additionally, the government states that "on more than one occasion, [Ms. Maxwell] informed Ana Davide, counsel for the Defendant, that a video from the storage unit did not exist." Id. The government further states that Mr. Quintero and Ms. Davide are willing to testify or provide an affidavit supporting these facts. Id. The government also states that the defendant is aware, through his use of a

private investigator, that video surveillance of the storage unit does not exist. Id.

The defendant does not dispute that the government told Ms. Davide that the video surveillance did not exist. See Defendant's Reply (DE# 388 at 2) (stating "[t]he Government touts that she told defense counsel Ana Davide on several occasions that the surveillance video did not exist. N[o] affidavit is necessary for that fact, I will also attest to that."). However, the defendant takes issue with the government's late disclosure of this information to Ms. Davide, "within the last 3-4 months (2019)." Id.

In his reply, the defendant seeks to compel the government to provide any written communications wherein AUSA Maxwell advised former counsel Frank Quintero that the government did not have video surveillance of the storage unit. See Defendant's Reply (DE# 388 at 1). The defendant notes that the government initially made this inaccurate representation in the February 7, 2018 email to Mr. Seitles, but sought to correct this mistake by communicating, not with Mr. Seitles, but with Mr. Quintero. Id. The defendant further notes that AUSA Maxwell discussed the February 7, 2018 email containing the inaccurate representation about the video surveillance at the suppression hearing without advising the Court that it was not true. Id. at 1 n.1.

The defendant is not entitled to the relief requested. The government stated that the representation made in the February 7, 2019 email about video surveillance was a mistake. The government did not obtain video surveillance of the storage unit. The Court will not compel the government to produce video surveillance which it does not have in its possession and which likely does not exist. Additionally, on May 22, 2019, this Court granted the defendant's motion for a Rule 17(c) subpoena duces tecum to the "Ives Dairy Self Storage to produce all documents, **including videos** and electronic or

physical key or access logs." Order Granting Motion for Rule 17(c) Subpoena Duces Tecum (DE# 383 at 1, 5/22/19) (emphasis added). Thus, any video surveillance, if it exists, will be provided to the defendant in response to his subpoena duces tecum. No further Order from this Court is necessary.

The Court will also not compel the government to produce communications it had with Mr. Quintero and will not hold an evidentiary hearing on the government's alleged discovery violation. The Court sees no purpose in requiring the government to produce these communications or holding a hearing on when the government advised the defendant's counsel that it did not have any video surveillance. To the extent that any video surveillance exists, the defendant will receive it in response to his subpoena duces tecum to Ives Dairy Self Storage.

### b.   The Defendant's Request to Re-open the Suppression Hearing and the Evidentiary Hearing on the Defendant's PSI Objections

The defendant also seeks to re-open the suppression hearing and the hearing on the defendant's objections to the PSI based on what he believes is new evidence – the activity log, the BOP telephone records and BOP visitation log. For the reasons discussed below, the defendant is not entitled to the relief requested.

### i.   Activity Log

The defendant seeks to re-open the suppression hearing and the evidentiary hearing on the defendant's objections to the PSI based on the activity log which shows that no one accessed the storage unit on September 26, 2017.

In essence, the defendant's Motion (DE# 365) is a motion for reconsideration. "[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." Burger King Corp. v. Ashland Equities, Inc., 181 F. Supp. 2d 1366, 1370

(S.D. Fla. 2002) (citing Mannings v. Sch. Bd. of Hillsborough Cnty., 149 F.R.D. 235, 235

(M.D. Fla. 1993)). "There are three major grounds which justify reconsideration: (1) an

intervening change in the controlling law; (2) the availability of new evidence; and (3)

the need to correct clear error or prevent manifest injustice." Id. at 1369 (citing Offices

Togolais Des Phosphates v. Mulberry Phosphates, Inc., 62 F. Supp. 2d 1316, 1331

(M.D. Fla. 1999); see also United States v. Edler, No. 13-60168-CR, 2013 WL 4543695,

at *1 (S.D. Fla. 2013) (applying reconsideration factors set forth in Burger King, 181 F.

Supp. at 1370 to a motion for reconsideration/rehearing of a pretrial detention order).

None of these grounds are met here. The activity log does not contradict Special Agent

Giroux's testimony for the reasons discussed below. Additionally, the activity log is not

"new evidence" because it was available to the defendant at the time of the July 27,

2018 suppression hearing and the December 11 and 12, 2018 evidentiary hearing

through the issuance of a subpoena. In fact, the defendant has recently subpoenaed

records from Ives Diary Storage which include the activity log. See Order Granting

Motion for Rule 17(c) Subpoena Duces Tecum (DE# 383 at 1, 5/22/19).

"Ordinarily, when a motion to suppress is denied before trial, the legal basis of

this denial becomes the law of the case for purposes of the trial, subject to appellate

review, and the defendant may not relitigate the suppression issue at trial." United

States v. Montos, 421 F.2d 215, 220 (5th Cir. 1970).[5] However, "[i]f new facts come to

light at trial, the trial judge in the exercise of his discretion may consider anew the

---

[5] The Eleventh Circuit in Bonner v. City of Prichard, 661 F. 2d 1206, 1207 (11th
Cir. 1981) (en banc), adopted as precedent decisions of the former Fifth Circuit
rendered prior to October 1, 1981.

suppression issue." Id. The activity log relied on by the defendant either does not contradict Special Agent Giroux's testimony or was otherwise available to the defendant at the time of suppression hearing and the evidentiary hearing on the defendant's objections to the PSI. Additionally, the activity log would not have affected the outcome of these proceedings. See United States v. Muhammad, 340 F. App'x 548, 550 (11th Cir. 2009) (affirming district court's denial of renewed motion to suppress where new evidence "did not differ from the suppression-hearing evidence and would not have led to a different outcome on the motion to suppress.").

The defendant argues that the activity log "debunks" the government's narrative tying the defendant to the storage unit. Supplement (DE# 378 at 1). In a related argument, the defendant also insists that the activity log "debunks" the government's narrative at the suppression hearing "that there was not two separate structures" because "there was no production going-on at THAT warehouse." Defendant's Reply (DE# 388 at 3).[6] The defendant appears to be arguing that because in the September 26, 2017 wire-tapped telephone call (Call # 1802), the defendant stated that he was going to the warehouse to pick up approximately ten sheets of paper and because the

---

[6] The defendant also claims that FBI agents knew that when the defendant discussed the warehouse in the Title III telephone calls, the defendant was referring to the original warehouse used by co-conspirator Roy Kahn. See Supplement (DE# 378 at 2). The problem with this argument is that at the time of the Title III telephone calls, approximately September 12, 2017 through October 12, 2017, the defendant had already assisted Mr. Kahn by clearing out the contents of Mr. Kahn's warehouse and renting the storage unit/warehouse at Ives Dairy Self Storage. See Report and Recommendation (DE# 261 at 18, 22, 1/30/19). Thus, it makes no sense that the defendant would have been discussing the original warehouse (which was vacated and "turned in" in approximately July 2017), id., in the intercepted telephone calls where the defendant talks about visiting the warehouse/storage unit. This argument is simply not credible.

10

activity log shows that no one accessed the storage unit on September 26, 2017, the activity log "debunks" the government's theory that there was only one storage unit/warehouse at the time of the Title III intercepted telephone calls. Id. The defendant also notes that "the T-3 calls specifically outlined a warehouse in Hollywood" and that the storage unit at Ives Dairy Self Storage was located in Miami. Id.

At the suppression hearing and at the evidentiary hearing on the defendant's objections to the PSI, the government presented evidence through the testimony of Special Agent Giroux that the defendant was heard on Title III telephone calls discussing the storage unit on at least six occasions. In one of the telephone calls dated September 26, 2017 (Call # 1802), the defendant stated that he would be going to the warehouse to pick up ten pages for a co-conspirator. The activity log shows that no one accessed the storage unit on September 26, 2017. However, the government and Special Agent Giroux did not seek to establish that the defendant visited the storage unit on a particular day. The activity log does not refute Special Agent Giroux testimony that the defendant discussed the storage unit on September 26, 2017 and on five other occasions during the Title III wiretap. In United States v. Simms, the Eleventh Circuit affirmed a district court's denial of a defendant's motion to re-open a suppression hearing where the new evidence the defendant sought to introduce was consistent with the evidence presented at the suppression hearing. 385 F.3d 1347, 1356 (11th Cir. 2004). Similarly here, the activity log is not "new evidence" and does not contradict Special Agent Giroux's testimony.

The defendant is also not entitled to re-open the July 27, 2018 suppression hearing and the December 11 and 12, 2018 evidentiary hearing based on the

11

government's alleged late production or non-production of the activity log. In a supplement, the defendant states that on May 17, 2019, he and Ms. Davide discussed Exhibit C (which includes the activity log). See Supplement (DE# 378 at 1). According to the defendant, Ms. Davide never received a copy of Exhibit C and she is willing to testify or provide an affidavit attesting to this fact. Id. at 1. The defendant further argues that even assuming Ms. Davide had received the activity log on July 30, 2018, as the government asserts, "the Government by then had already committed a fraud upon this Court" by presenting a false narrative to the Court that the Title III telephone calls "tied the Defendant to the Ives Dairy Self Storage Unit." Id.

Assuming the government never provided the activity log to Ms. Davide, the defendant has not shown why he could not have subpoenaed the activity log directly from Ives Dairy Self Storage prior to the suppression hearing. As previously noted, the defendant recently issued a subpoena to Ives Dairy Self Storage. See Order Granting Motion for Rule 17(c) Subpoena Duces Tecum (DE# 383 at 1, 5/22/19). Alternatively, assuming the government provided the activity log to Ms. Davide on July 30, 2018, the defendant could have brought the activity log to the Court's attention in his objections to the Sealed Report and Recommendation (DE# 115), which was not issued until August 2, 2018. Additionally, the defendant could have introduced the activity log at the evidentiary hearing on the defendant's objections to the PSI which did not occur until December 11 and 12, 2018. The defendant did not do so because the activity log does not exonerate the defendant. It merely shows that no one visited the storage unit on a date the defendant said he would go to the warehouse to pick up approximately ten sheets of paper for a co-conspirator.

The activity log does not refute Special Agent Giroux's testimony that the defendant discussed the storage unit in the Title III telephone calls on approximately six occasions. See Report and Recommendation (DE# 261 at 25, 1/30/19). The activity log also does not refute co-defendant Lucia Mendez' statements to Special Agent Giroux during her debriefing wherein she stated that she had been to the storage unit three times, **each time with the defendant**. Id. In sum, the activity log would not have affected the outcome of the proceedings.

### ii.     BOP Telephone Records and Visitation Log

The defendant also seeks to re-open the suppression hearing based on the defendant's belief that the BOP telephone records and visitation log prove that the defendant's former counsel, Marc Seitles, lied to the Court. The defendant asserts that Mr. Seitles testified at the suppression hearing that he visited the defendant at the Federal Detention Center ("FDC") on February 7, 2018[7] to obtain the defendant's consent for the government to search the storage unit. See Supplement (DE# 378 at 2). According to the defendant, the BOP telephone records and visitation log show that Mr. Seitles did not visit the defendant or speak to the defendant by telephone on February 7, 2018. Id.

The Court has reviewed the BOP telephone records which were filed by the

---

[7] The defendant focuses on the February 7, 2018 date. However, at the suppression hearing, Mr. Seitles testified that he learned that the government knew of the existence of the storage unit and the storage unit's location from an email dated February 6, 2018 and sent at 11:05 AM. See Suppression Hearing Transcript (DE# 158 at 16, 8/15/18). A copy of that email was admitted at the suppression hearing as Government's Exhibit 1. On direct examination, Mr. Seitles testified that he went to see the defendant that day. Id. at 20. On cross-examination, Mr. Seitles testifies that he went to see the defendant the following day. Id. at 51.

defendant in support of another motion. See Defendant's Exhibit A (DE# 385-1, 5/23/19). The telephone records show the defendant received two telephone calls on February 6, 2018 (the day Mr. Seitles learned the government knew about the storage unit and had the location) and one telephone call on February 7, 2018. Id. at 3. The Court notes that the telephone records do not contain information on the identity of the other caller. Id. In other words, the telephone records do not indicate who the defendant spoke to on those days. Thus, it is unclear why the defendant asserts that the telephone records prove he did not speak to Mr. Seitles during that relevant timeframe.

The defendant also argues that the BOP visitation log proves Mr. Seitles never visited the defendant on February 7, 2018. The defendant filed what appears to be the BOP visitation log for February 7, 2018 as part of an unrelated motion. See Defendant, Danny Angel Rodriguez' Notice of Filing Additional Exhibit in Support of Motion for Reconsideration of Bond (DE# 296 at 5-6, 3/28/19). This document appears to show that the defendant did not receive any visitors on February 7, 2018. However, the defendant did not file the BOP visitation log for February 6, 2018. Mr. Seitles learned that the government knew about the storage unit on February 6, 2018 and could have visited the defendant on that day instead.

Mr. Seitles' testimony at the suppression hearing is unclear as to which day he visited the defendant. On direct examination, Mr. Seitles appears to state that he visited the defendant on February 6, 2018:

Q    You're familiar with this e-mail exchange?

A    I am.

Q    Okay. So what prompted your initial e-mail to the government stating the information regarding the proffer and what your client was

willing to talk to the government about?

> A    I stated it earlier, but **it was the first e-mail that you sent on February 6th, 2018, at 11:05 a.m.**, and that was that he located and secured Danny Rodriguez's warehouse where he's doing much of his work. Can we get your client to consent to enter and search or shall I go the search warrant route?
>
> I responded to you in that e-mail that I'm certain he will consent, **but let me go speak to him today, which I did**.
>
> **I spoke to him**, and not only did --
>
> Q    Do you have that e-mail? Because when I did an archive search, I was not able to find it.
>
> A    I do.

Suppression Hearing Transcript (DE# 158 at 20, 8/15/18) (emphasis added). However, on cross-examination, Mr. Seitles stated that he visited the defendant on February 7, 2018:

> Q    Mr. Seitles, I'm going to move on briefly to the issue of consent that you gave with respect to the search on February 7th.
>
> Now, you stated in your direct testimony to Ms. Maxwell that there was an e-mail -- that you had exchanged e-mails on February 6th where she had asked if you would consent to a search.
>
> A    Correct. She sent us an e-mail indicating that they had located the warehouse, and should they go the search warrant route or the consent route.
>
> And I wrote back in an immediate e-mail, I'm sure he's going to consent. Let me go talk to him.
>
> **That was on a Tuesday. And I went to go see him the following day** and that's when we went through all the contents of the warehouse, the fact that the government was now aware that there was a warehouse, which was unbeknownst to me, although I think Mr. Quintero knew about it.
>
> But in reality, we said this is our one shot to get cooperation credit for what's inside the warehouse because we didn't believe the government

knew what was inside. And they couldn't turn away that information. They couldn't discredit him, and they'd have to give him cooperation credit.

But more importantly for Mr. Rodriguez and I's perspective is that they couldn't use it against him by increasing the weight in the drug quantity guidelines.

Q    Now, on the 7th, which is the next day, when you e-mailed Ms. Maxwell the proffer --

A    Correct.

Id. at 51-52 (emphasis added). The Court takes judicial notice that February 6, 2018 was a Tuesday. The BOP visitation log for February 7, 2018, does not foreclose the possibility that Mr. Seitles visited the defendant on February 6, 2018.

In any event, the defendant is not entitled to a new suppression hearing based on the BOP telephone records and visitation log. The BOP telephone records and visitation log are not "new evidence." At the time of the suppression hearing, the defendant had personal knowledge of whether Mr. Seitles visited him at FDC or not. The defendant could have impeached Mr. Seitles' testimony. Moreover, the defendant could have obtained the telephone records and visitation log prior to the suppression hearing.[8] The defendant chose not to. The defendant's failure to obtain available records does not warrant the reconsideration of the motion to suppress. The defendant cannot now re-open the suppression hearing almost one year later based on evidence that would have been available to him at the time of the suppression hearing.

Additionally, the BOP telephone records and visitation log would not have affected the outcome of the suppression hearing. Even assuming, arguendo, that Mr.

---

[8] The Court notes that the defendant subpoenaed the BOP telephone records in December 2018. See Order Granting Motion for Rule 17(c) Subpoena Duces Tecum (DE# 238, 12/21/19).

Seitles did not visit the defendant at FDC to obtain his consent, on February 7, 2018 at 11:29 AM, Mr. Seitles still sent an email to the government stating, "Danny advised me to tell you he gives his consent." See Email (DE# 301 at 13). Under the doctrine of apparent authority, the government would have been entitled to rely on Mr. Seitles' representation that the defendant had given his consent. "Even if the third party lacks actual authority to consent to the search, if an officer has an objectively reasonable, good-faith belief that the consent is valid, there is no Fourth Amendment violation." United States v. Zarabozo, 378 F. App'x 939, 941 (11th Cir. 2010) (citing United States v. Brazel, 102 F.3d 1120, 1148 (11th Cir. 1997)). In Zarabozo, the Eleventh Circuit:

> conclude[d that] the district court did not err in ruling the evidence taken from [the defendant]'s bedroom was admissible, because [the defendant]'s mother had apparent authority to consent to the search of his room that led FBI agents to the probable cause they used to obtain a warrant. [The defendant]'s mother told FBI agents she was the head of the house and that by living in her house, [the defendant] had agreed he would abide by her rules and let her be "in his business."

Id. Here, the government had an objectively reasonable, good-faith belief that it had the defendant's consent to search the storage unit, based on the representation of the defendant's attorney. The defendant cannot now re-open the suppression hearing almost one year later based on evidence that would not have changed the outcome of the suppression hearing.

### c.    Government's Ability to Obtain Warrant

Lastly, the defendant argues that the government could not have obtained a warrant because it would have been based on a lie – tying the defendant to the storage unit. Supplement (DE# 378 at 1). The defendant ignores the other evidence available to the government at the time of the February 6 and 7, 2018 email exchange. On February

4, 2018, Ms. Mendez, through her attorney, disclosed to the government the address of the storage unit, the name of the person on the storage unit rental agreement and that Ms. Mendez believed the warehouse would still likely have drugs in it. See Sealed Report and Recommendation (DE# 115 at 10, 8/2/18). In a debriefing, Ms. Mendez told Special Agent Giroux that she had been to the storage unit three times, **each time with the defendant**. See Report and Recommendation (DE# 261 at 25, 1/30/19). The government also had the Title III intercepted telephone calls where the defendant discussed the storage unit on approximately six occasions. The activity log does not "debunk" the government's narrative, as the defendant claims. The activity log merely shows that on September 26, 2017, no one accessed the storage unit, even though the defendant was heard on that date in Call # 1802 stating that he would go to the warehouse to pick up ten pages for a co-conspirator.

For all these reasons, the defendant's Motion (DE# 365) is **DENIED**.

## CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Motion to Compel[ ] Government to Release Exculpatory Evidence, That They've Admitted to Possessing (DE# 356, 5/8/19) is **DENIED as moot**. It is further

ORDERED AND ADJUDGED that the Motion for Hearing on Discovery Violations: Pro Se Defendant is Unjust Caught In – (Endless Finger-Pointing) Between

Defense Counsel and Government (DE# 365, 5/14/19) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this _3_ day of _JUNE_, 2019.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies mailed by Chambers to:
Danny Angel Rodriguez
48128-004
Miami FDC
Federal Detention Center
Inmate Mail/Parcels
Post Office Box 019120
Miami, FL 33101