UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20904-CR-UNGARO/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANNY ANGEL RODRIGUEZ,

    Defendant.
_____/

## ORDER

THIS MATTER is before the Court on the Motion to Compel Courts [sic] Granted Privacy Act Order (DE# 350, 5/7/19) and the Motion to Compel Government to Produce All Images and Video Evidence Taken From the Storage Unit; Ives Dairy Self Storage (DE# 366, 5/14/19).

The instant motions were filed by the defendant pro se. Pro se filings are liberally construed. Winthrop-Redin v. United States, 767 F.3d 1210, 1215 (11th Cir. 2014).

## BACKGROUND

On May 7, 2019, the defendant filed a Motion to Compel Courts [sic] Granted Privacy Act Order (DE# 350, 5/7/19). The government filed its response on May 15, 2019. See Government's Response to Defendant's Pro-Se Motion to Compel Court's Granted Privacy Act Order [D.E. 350] (DE# 369, 5/15/19). The defendant filed his reply on May 23, 2019. See Reply to Government['s] Response to Pro-Se Motion to Compel [DE 350], and Supplement [DE 365], & Motion to Seal Exhibit (A) Herein (DE# 385,

5/23/19).[1]

On May 14, 2019, the defendant filed a Motion to Compel Government to Produce All Images and Video Evidence Taken from the Storage Unit; Ives Dairy Self Storage (DE# 366, 5/14/19). The government filed a response on May 15, 2019. See Government's Response to Defendant's Pro Se Motion to Compel Government to Produce All Images and Video Evidence Taken from the Storage Unit; Ives Dairy Self Storage [D.E. 366] (DE# 370, 5/15/19). The defendant filed a reply on May 23, 2019. See Defendant[']s Reply to Government Response [DE 370]: to Defendant[']s Motion to Compel Gov. to Produce All Evidence Gathered from Storage Unit [DE 366] (DE# 387, 5/23/19).

On June 3, 2019, the Court held an evidentiary hearing. The government presented the testimony of Lieutenant Fernando Arroyo and Agent Anthony Pellicano. The defendant presented the testimony of his father, Fernando Rodriguez, and FBI Special Agent Damian Giroux. The Court admitted into evidence the Government's Exhibits 1 through 3.

This matter is ripe for adjudication.

## **FACTS**

**1.  Testimony of Lt. Arroyo**

The Federal Bureau of Prisons ("BOP") records all telephone calls made by inmates. These calls are "unlocked," meaning they will automatically be purged from the

---

[1] Docket Entry 384 is identical to Docket Entry 385, except that Docket Entry 384 does not include exhibits.

system after of a period of approximately six months. When BOP receives a subpoena duces tecum or some other request for inmate telephone calls, BOP will "lock" the requested telephone calls. These "locked" telephone calls will remain in the system and will not be automatically purged from the system after a period of approximately six months. Locked calls remain locked until BOP receives written notice that the calls are no longer needed. Once a call is purged from the system, it cannot be retrieved.

In the instant case, BOP received a grand jury subpoena from the United States Attorney's Office in Cleveland asking for the defendant's calls from September 15, 2017[2] through March 21, 2018. These calls were locked and remain in the system.

On December 6, 2018, the defendant's then counsel, Ramon Hernandez, filed a motion seeking the issuance of a subpoena duces tecum to BOP for the defendant's telephone records. See Motion for Rule 17(c) Subpoena Duces Tecum (DE# 219, 12/6/18). The subpoena duces tecum asked for "[a]ll telephone calls/communications to or from inmate Danny Angel Rodriguez (Register Number 48128-004) that are in possession of FDC-Miami or the Bureau of Prisons." See Subpoena Duces Tecum (DE# 239 at 4, 12/21/18). According to a note in the Government's Exhibit 1, BOP received the subpoena from the defendant's counsel on January 16, 2019.

In response to the subpoena duces tecum from the defendant's counsel, BOP was able to produce calls that were locked in response to the grand jury subpoena received from the United States Attorney's Office in Cleveland because those locked

---

[2] The defendant was arrested on December 7, 2017. See Minute Order (DE# 6, 12/8/17).

calls remained in the system. BOP was also able to produce calls from July 28, 2018 through January 2019, because those calls had not yet been purged from the system.

**2.    Testimony of Agent Pellicano**

As part of his investigation in the instant case, Agent Anthony Pellicano listened to approximately 99 percent of the defendant's BOP telephone calls. Agent Pellicano saved in his computer three telephone calls between the defendant and co-defendant Lucia Mendez. Agent Pellicano did not "lock" these telephone calls in the BOP system. These three calls were produced to the defendant as part of the government's discovery. Agent Pellicano does not have any other telephone calls between the defendant and Ms. Mendez.

**3.    Testimony of Fernando Rodriguez, the Defendant's Father**

After the defendant was arrested and taken into custody, Ms. Mendez would go to the defendant's father's house almost every day. The defendant would call his father from prison and would also speak to Ms. Mendez when she was at the defendant's father's house.

The last time Ms. Mendez spoke to the defendant's father was in mid-April 2018. Ms. Mendez told the defendant's father that the government had told her to stay away from the defendant's family.

**4.    Special Agent Giroux**

Special Agent Giroux was present during the search of the storage unit at Ives Dairy Self Storage. The search of the storage unit was conducted by a hazmat team. The hazmat team took 21 photographs of the storage unit. See Government's Exhibit 2. Agent Pellicano took an additional 29 photographs of the storage unit. See

Government's Exhibit 3. The government does not have any video of the search.

## ANALYSIS

**1.    Motion to Compel Courts [sic] Granted Privacy Act Order (DE# 350, 5/7/19)**

The defendant seeks to compel the production of telephone calls made by the defendant while in the custody of BOP during April, May and June of 2018. In the reply, the defendant states that the missing telephone calls span from March 5, 2018 through July 28, 2018. See Reply (DE# 388 at 2). At the June 3, 2019 evidentiary hearing, the defendant clarified that the range of missing telephone calls was March 6, 2018 through July 27, 2018.

The Motion (DE# 350) is **DENIED**. The Court finds that all available telephone calls have been produced to the defendant. BOP was able to produce calls which had been locked pursuant to a grand jury subpoena issued by the United States Attorney's Office in Cleveland. Additionally, in January 16, 2019, BOP received a subpoena duces tecum from the defendant's then-counsel, Mr. Hernandez. BOP was able to go back approximately six months and produce telephone calls made from July 28, 2018 through the date of the subpoena duces tecum.

There is no evidence that the calls made between March 21, 2018[3] through July 27, 2018 still exist, with the exception of the three calls produced by Agent Pellicano which were not "locked" in the BOP system, but saved in Agent Pellicano's computer. Agent Pellicano has testified that these three telephone calls were the only calls in Agent Pellicano's possession in which Ms. Mendez was speaking to the defendant

---

[3] The March 21, 2018 was the end date of the calls sought in the grand jury subpoena.

during the period of March 6, 2018 through July 27, 2018.

If the government finds any additional calls, the government shall immediately produce those calls to the defendant.

2.  **Motion to Compel Government to Produce All Images and Video Evidence Taken From the Storage Unit; Ives Dairy Self Storage (DE# 366, 5/14/19)**

The defendant seeks to compel the government to produce "evidence taken from the Ives Dairy Self Storage," including "any and all picture images and videos taken from the said Storage Unit." Motion (DE# 366 at 1) (some capitalization omitted). The defendant asserts that the images previously provided by the government to Ms. Davide are incomplete. Id. In his reply, the defendant asserts that the government has failed to produce images of the bookbinder or the "fake-weed." Defendant's Reply (DE# 387 at 1). At the June 3, 2019 evidentiary hearing, the defendant clarified that what he actually seeks are photographs and videos taken by the government during the search of the storage unit.

All of the photographs that were taken on the day of the search were produced to the defendant. See Government's Exhibits 2 and 3. The government has now identified which image it believes depicts the alleged bookbinder. As to the "fake weed," the defendant explained that he is referring to the ADB-FUBINACA. The government has identified the images it believes depict the ADB-FUBINACA. The government does not have any video of the search. Because the defendant has received everything he requested, the Motion (DE# 366) is **DENIED**.[4]

---

[4] At the June 3, 2019, evidentiary hearing, the defendant also asked for communications between AUSA Maxwell and former counsel Frank Quintero wherein Ms. Maxwell advised Mr. Quintero that the government did not have any video surveillance of the storage unit. AUSA Maxwell represented to the Court that no written

## **CONCLUSION**

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Motion to Compel Courts [sic] Granted Privacy Act Order (DE# 350, 5/7/19) is **DENIED**. If the government finds any additional calls, the government shall immediately produce those calls to the defendant. It is further

ORDERED AND ADJUDGED that the Motion to Compel Government to Produce All Images and Video Evidence Taken From the Storage Unit; Ives Dairy Self Storage (DE# 366, 5/14/19) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this **3rd** day of June, 2019.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies mailed by Chambers to:
Danny Angel Rodriguez
48128-004
Miami FDC
Federal Detention Center
Inmate Mail/Parcels
Post Office Box 019120
Miami, FL 33101
PRO SE

---

communication between AUSA Maxwell and Mr. Quintero concerning the video surveillance exists because she communicated this information verbally to Mr. Quintero. The defendant had previously sought to compel the government's communications with Mr. Quintero and the Court denied that request. See Order (DE# 398 at 8, 6/3/19). Because these written communications between the government and Mr. Quintero do not exist, the Court will not order their production.