UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20904-CR-UNGARO/O'SULLIVAN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DANNY ANGEL RODRIGUEZ,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on the Motion for Return of Property (DE# 476, 6/26/19) filed by the defendant pro se.[1] This case was referred to Chief United States Magistrate Judge John J. O'Sullivan pursuant to 28 U.S.C. § 636. See Order of Reference (DE# 487, 7/1/19). Having carefully reviewed the applicable filings and the law and having held an evidentiary hearing on November 5, 2019, the undersigned respectfully RECOMMENDS that the Motion for Return of Property (DE# 476, 6/26/19) be **DENIED** for the reasons stated herein.

## BACKGROUND

On June 26, 2019, the defendant filed the instant motion seeking the return of $4,600 seized from the defendant's Bank of America account number ending in 6006

---

[1] Pleadings filed by pro se litigants are construed liberally. United States v. Webb, 565 F.3d 789, 792 (11th Cir. 2009). Courts "have an obligation to look behind the label of a motion filed by a pro se inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework." United States v. Jordan, 915 F.2d 622, 624-25 (11th Cir. 1990). Applying this standard to the defendant's pro se filings, the undersigned nonetheless concludes for the reasons stated herein that the defendant is not entitled to the relief requested.

(hereinafter "Account 6006"). <u>See</u> Motion for Return of Property (DE# 476, 6/26/19) (hereinafter "Motion"). The government filed its response in opposition on July 8, 2019. <u>See</u> Government's Response to Defendant's <u>Pro</u> <u>Se</u> Motion for Return of Property [ECF No. 476] (DE# 493, 7/8/19) (hereinafter "Response"). The defendant filed his reply on July 24, 2019. <u>See</u> <u>Pro</u> <u>Se</u> Reply to Government's Response to <u>Pro</u> <u>Se</u> Motion to [sic] Return of Property (DE# 505, 7/24/19) (hereinafter "Reply").

The government filed a sur-reply on August 7, 2019 and a more detailed sur-reply on October 3, 2019. <u>See</u> Government's Sur-Reply to the <u>Pro</u> <u>Se</u> Reply to Government's Response to <u>Pro</u> <u>Se</u> Motion [for] Return of Property (DE# 511, 8/7/19) (hereinafter "Sur-Reply); Government's More Detailed Sur-Reply to the <u>Pro</u> <u>Se</u> Reply to Government's Response to <u>Pro</u> <u>Se</u> Motion [for] Return of Property Pursuant to ECF No. 512 (DE# 525, 10/3/19) (hereinafter "More Detailed Sur-Reply"). The defendant filed objections to the Sur-Reply and the More Detailed Sur-Reply. <u>See</u> Defendant's Response and Objections to the Government's Sur-Reply (DE# 535, 10/22/19) (hereinafter "Response to Sur-Reply"); <u>Pro</u> <u>Se</u> Defendant's [Motion] to Supplement His Forfeiture Objections Filed on 10/15/19: to Government's Sur-Reply DE# 525 (DE# 538, 10/22/19) (hereinafter "Response to More Detailed Sur-Reply").

On October 28, 2019, the defendant filed a document summarizing the evidence he sought to present at the evidentiary hearing. <u>See</u> Motion to Outline Witnesses and Documentary Evidence to Be Presented at Forfeiture Hearing (DE# 547, 10/28/19). On November 1, 2019, the government filed a bench memorandum. <u>See</u> Bench Memorandum for Evidentiary Hearing on Defendant's Motion for Return of Property

(DE# 551, 11/1/19) (hereinafter "Bench Memorandum"). In its Bench Memorandum, the government agreed not to dispute certain facts that the defendant sought to introduce at the evidentiary hearing. Specifically, the government stipulated:

> that both cashier[']s checks were loans from [the defendant's] parents[,] . . . . that the funds [for the cashier's checks] came from [the defendant's father], and . . . [that] Ana Davide . . . was unaware of the seizure warrants. [ECF No. 547].

Id. at 5. Because the government stipulated to these facts, there was no longer a need to present the testimony of the defendant's father and Ms. Davide.

On November 5, 2019, the undersigned held an evidentiary hearing. The government did not call any witnesses. The defendant called FBI Special Agent Damian Giroux. The undersigned admitted into evidence the Government's Exhibits 1 through 4. The defendant introduced as Defendant's Exhibit A his father's bank records, which the defendant later mailed to the Court. See Certificate of Compliance re: Admitting Evidence for Exhibits Offered or Introduced by Pro Se Defendant at Hearing Held on November 5, 2019 (DE# 570, 12/3/19).[2]

On November 7, 2019, the government filed a notice of supplemental authority

---

[2] This document also references Defendant's Exhibit B, which the defendant describes as documents from Case No. 94-402. In another filing (DE# 571), the defendant states that he has requested these documents from the National Archives and Records Administration and that he believes the documents will show the extent of Judge Turnoff's involvement in Case No. 94-402. See Motion to Up-Date the Court of the Status Regarding Exhibit 13 from November 5th 2019 Hearing (DE# 571, 12/23/19). The undersigned does not need to wait for the defendant to file Exhibit B, because Judge Ungaro has already denied defendant's recusal motions. See Order (DE# 291, 3/7/19). For the reasons stated in this Report and Recommendation, the defendant's argument that the seizure warrant directed at Account 6006 is void because it was signed by Magistrate Judge Turnoff is not persuasive.

concerning the ownership interest of loan proceeds. <u>See</u> Notice of Supplemental Authority (DE# 560, 11/6/19). The defendant filed several post-hearing documents. <u>See</u> Response to Government[']s Post Evidentiary Hearing Filing DE 560 Before the Honorable Magistrate Judge O'Sullivan re: Forfeiture (DE# 563, 11/12/19); Post 11/5/2019 Hearing Memorandum (DE# 565, 11/13/19) and Motion to Up-Date the Court of the Status Regarding Exhibit 13 from November 5th 2019 Hearing (DE# 571, 12/23/19).

This matter is ripe for adjudication.

## FACTS[3]

**1.   Loans from the Defendant's Father**

On November 30, 2017, the defendant's father gave the defendant a cash loan of $5,000. On December 6, 2017, the defendant's father gave the defendant another cash loan of $5,000.[4] The defendant's father loaned the defendant this money to help the defendant with moving expenses. At the time, the defendant and his fiancée had planned on moving in together and renting a property. The defendant spent some of the money on furniture and other items and deposited the rest in Account 6006.

On December 6, 2017, the defendant purchased two cashier's checks from Bank of America using the money deposited in Account 6006. One of the two cashier's

---

[3] The facts summarized herein are only those facts which are relevant to the instant motion. The relevant facts are not in dispute.

[4] The defendant told the Court that his father gave him over $250,000 since the defendant was released from prison. The only money at issue is the $4,600 that is the subject of the instant Motion.

checks was for $4,600 and made out to Mirta Perez.[5]

The defendant never gave the cashier's check to Ms. Perez because on December 7, 2017, the defendant was arrested. Sometime thereafter, the defendant's father returned the $4,600 cashier's check to Bank of America and the money was credited back to Account 6006 on December 12, 2017.

**2.     Issuance of the Seizure Warrant**

In the interim, on December 6, 2017, FBI Special Agent Damian Giroux presented a seizure warrant application to United States Magistrate Judge William C. Turnoff. See Application for a Warrant to Seize Property Subject to Forfeiture, Case No. 17-mj-3751-WCT. In the affidavit in support of the seizure warrant, Special Agent Giroux attested that there was:

> probable cause to believe that DANNY RODRIGUEZ ("Rodriguez") and LUCIA MENDEZ ("Mendez") ha[d] engaged in a conspiracy to distribute controlled substances in violation of Title 21, United States Code, Section 846, that they derived substantial proceeds from that activity, and that they **knowingly used those proceeds to engage in financial transactions with intent to conceal or disguise the nature, location, source, ownership and control of the proceeds in the Target Accounts**, in violation of Title 18, United States Codes, Section 1956(h).

Affidavit in Support of Application for Seizure Warrant (hereinafter "Seizure Warrant Affidavit") at ¶4 (emphasis added). The affidavit listed Account 6006 as one of the Target Accounts. Id. at 1.[6]

---

[5] Ms. Perez was the defendant's prospective landlady. The defendant and his fiancée were going to rent a property owned by Ms. Perez.

[6] The government obtained seizure warrants for multiple bank accounts in connection with this case. Account 6006 is the only bank account relevant to the instant Motion.

Specifically, Special Agent Giroux attested that the defendant and Ms. Mendez jointly owned Pink Broom Cleaning Services LLC (hereinafter "Pink Broom") and that Pink Broom was "being used to disguise payments of illegal proceeds." Seizure Warrant Affidavit at ¶18. Special Agent Giroux believed that the different Target Accounts -- including Account 6006 (identified in the Affidavit as "Target Account 3") -- received deposits which constituted proceeds from the defendant's illegal scheme:

19. **The deposits into Target Accounts 1, 3 and 5 appear to be payments for the shipment of controlled substances to [Federal Corrections Institutions]**. There are three categories of deposits that I believe are proceeds of the drug sale conspiracy based upon the circumstances of their deposit, as detailed below.

20. First, substantial cash deposits were made at multiple bank locations across the country. Many of the deposits were made with deposit slips filled out by hand. Several deposit slips have signatures of individuals other than Rodriguez and Mendez, in varied handwriting. A total of approximately $260,843 in cash was deposited into three of the Target Accounts, with the following breakdown:

| Account | Cash Deposits |
| --- | --- |
| **Target Account 3 (Rodriguez)** | **$196,177** |
| Target Account 1 (Pink Broom) | $46,348 |
| Target Account 5 (Mendez) | $18,318 |

21. Second, I observed incoming payments listed as "IRS Treas." I know that these payments are from the BOP, and are payments from FCF inmates' commissary accounts. A total of $7,240 was deposited into Target Accounts 2 and 5 in this manner.

22. Finally, **I observed deposits of money orders in Target Accounts 1, 3 and 5 that do not appear to have any legitimate business**

6

**purpose.** The subject line on many of these money orders says "loan," for example. There is no evidence of any business or personal reason that Rodriguez or Mendez would be taking out loans, especially not in such small dollar amounts from so many different individuals. A total of $41,600 in money orders was deposited in this way.

23. Based upon this analysis **I believe that at least $309,683 in proceeds from the conspiracy to distribute controlled substances was deposited into the target accounts.**

Id. at ¶¶19-23 (emphasis added). Special Agent Giroux also noted suspicious transfers between the different target accounts, including Target Account 3 (Account 6006):

A review of the bank accounts shows a significant number of transfers between and among all of the target[ ] accounts. **There does not seem to be any legitimate business or other reason for the movement of money in this way. The purpose of these transactions appears to be to conceal or disguise the nature, location, source, ownership, or control of the Target Accounts.** The transfers were constant, often more than one transfer per day.

Id. at ¶24 (emphasis added).

Based on the information contained in the Seizure Warrant Affidavit, Magistrate Judge Turnoff signed the seizure warrant permitting the seizure of "[t]he contents of the Bank of America account number . . . 6006 in the name of Danny Rodriguez." Warrant to Seize Property Subject to Forfeiture. (DE# 493-1 at 1, 7/8/19).

**3.    Execution of the Seizure Warrant**

On December 7, 2017, the same day as the defendant's arrest, the government served the seizure warrant for Account 6006 on Bank of America. See Warrant to Seize

Property Subject to Forfeiture (DE# 493-1, 7/8/19).[7]

On December 28, 2017, Bank of America sent a letter to the government in response to the seizure warrant. See Letter (DE# 493-1 at 3, 7/8/19). The letter indicated that $6,893.46 were "on hold"[8] and asked the government for "further instructions regarding the Seizure Warrant and disbursement of funds and disposition of the account(s)." Id.

In response to the seizure warrant, Bank of America issued a check to the government in the amount of $6,893.46, the amount of funds in Account 6006. See Warrant Return (DE# 493-1 at 2, 7/8/19).

On January 24, 2018, Special Agent Giroux signed the return on the seizure warrant. It stated "[a] check was issued in the amount of $6,893.46." See Warrant Return (DE# 493-1 at 2, 7/8/19).

**4.    The Preliminary Order of Forfeiture**

On January 31, 2018, the government filed a bill of particulars providing "notice that it [would] seek[ ] forfeiture of . . . [the funds seized from Account 6006] as property forfeitable pursuant to 21 U.S.C. § 853(a) and 18 U.S.C. § 982(a)(1)." United States' Bill of Particulars as to Forfeiture (DE# 24 at 1, 1/31/18).

---

[7] The parties do not dispute that attorney Ana Davide was unaware of the seizure warrants at the time they were executed. The undersigned notes that, at the time, the defendant was represented by attorney Marc Seitles, and not Ms. Davide. In any event, it is not customary for the government to notify a defendant's attorney before executing a seizure warrant on the defendant's property.

[8] The bank records for Account 6006 appear to reflect that the bank placed $1,880.13 "on hold" on December 7, 2017 and $5,013.33 "on hold" on December 15, 2019 in response to the seizure warrant. See Bank Records (DE# 525-2 at 4, 10/3/19).

On August 20, 2018, the defendant pled guilty to counts 1 through 24 of the Superseding Indictment, which included one count of conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h) and four counts of money laundering in violation of Title 18, United States Code, Section 1957.[9] See Transcript of Change of Plea Hearing (DE# 184, 10/31/18). The criminal forfeiture statute provides that "[t]he court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C.A. § 982(a)(1).

The Court determined that the amount of money laundered by the defendant was $260,110.00. See Report and Recommendation (DE# 261 at 46, 1/30/19); Order adopting the Report and Recommendation (DE# 433, 6/6/19).

On June 11, 2019, the Court issued a preliminary order of forfeiture which provided for the forfeiture of certain accounts including Account 6006.[10] See

---

[9] The superseding indictment charged the defendant with one count of conspiracy to possess with the intent to distribute a controlled substance analogue (ADB-FUBINACA) in violation of Title 21, United States Code, Section 846 (Count 1); one count of conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h) (Count 2); one count of possession with the intent to distribute a controlled substance analogue in violation of Title 21, United States Code, Section 841(a)(1) (Count 3); seventeen counts of possession with the intent to distribute ADB-FUBINACA in violation of Title 21, United States Code, Section 841(a)(1) (Counts 4 through 20) and four counts of money laundering in violation of Title 18, United States Code, Section 1957 (Counts 21 through 24). See Superseding Indictment (DE# 58, 6/20/18).

[10] The defendant's Motion asserts that "[n]either the Motion for a Preliminary Order of Forfeiture nor the Order thereon contained any acknowledgment or reference to the $4,600 deposit made on December 12th, 2017." Motion at 2. While the government's

Preliminary Order of Forfeiture (DE# 450, 6/11/19). The Court also entered a money judgment against the defendant in the amount of $260,110.00. Id. at 2-3. The preliminary order of forfeiture allowed the government to seek substitute assets to satisfy the money judgment:

> IT IS FURTHER ORDERED that the United States may, at any time, move pursuant to Federal Rule 32.2(e) to amend this Order so as to substitute property of Defendant DANNY ANGEL RODRIGUEZ, having a value not to exceed the sum of $260,110.00, in United States currency in satisfaction of the money judgment in whole or in part.

Id. at 3.

The defendant now seeks the return of $4,600 seized from Account 6006. Motion at 2.

## ANALYSIS

The defendant seeks the return of $4,600 seized from Account 6006 pursuant to a seizure warrant. Motion at 2.

### 1.     The Government is in Possession of the $4,600

The government initially argued that it was not in possession of the $4,600 because the warrant was served on December 7, 2017 and the $4,600 was not credited to Account 6006 until December 12, 2017. See Response at 1. However, in subsequent filings and at the November 5, 2019 evidentiary hearing, the government acknowledged that the $4,600 was included in the $6,893.46 check it received from Bank of America,

---

motion for a preliminary order of forfeiture and the Court's preliminary order of forfeiture do not detail any deposits made in the defendant's account, both documents specifically reference the amount of funds in Account 6006 ($6,893.46), which necessarily included the $4,600 credited to Account 6006 after the defendant's father returned the cashier's check. See United States' Motion for a Preliminary Order of Forfeiture (DE# 447 at 2, 6/10/19); Preliminary Order of Forfeiture (DE# 450 at 2, 6/11/19).

the total funds in Account 6006. See Evidentiary Hearing Transcript (DE# 579 at 43, 1/14/20). Thus, it is no longer disputed that the government is in possession of the $4,600 at issue in the instant Motion.

**2.    Magistrate Judge Turnoff's Issuance of the Seizure Warrant**

The defendant argues that the seizure warrant is void because it was signed by Magistrate Judge Turnoff. Reply at 1. The defendant asserts that Magistrate Judge Turnoff was recused from the defendant's case because he was a magistrate judge at the time the recusal order was issued in the defendant's prior case, Case No. 94-cr-402. Id. (citing In re Moody, 755 F.3d 891 (11th Cir. 2014) (per curiam)). According to the defendant, once a judge is recused, he is "forever recused" from any cases involving the same defendant. Response to Sur-Reply at 1.

In the instant case, the defendant sought the recusal of all judges in the Southern District of Florida, based on the order of recusal entered in Case No. 94-cr-402. See Defendant's Motion to Enforce Recusal Order (DE# 277, 2/15/19); Defendant's Motion for Recusal Pursuant to 28 U.S.C. § 455 (DE# 280, 2/19/19). Judge Ungaro denied the defendant's recusal motions. See Order (DE# 291, 3/7/19).

One of the arguments raised by the defendant in his recusal motions was that "the district-wide recusal order [issued in Case No. 94-cr-402 wa]s still in effect and should be applied and enforced in this case." Order (DE# 291 at 4). This is essentially the same argument the defendant advances now with respect to the seizure warrants signed by Magistrate Judge Turnoff.

In rejecting the defendant's argument, Judge Ungaro relied on the language of the Order of Recusal entered in Case No. 94-cr-402:

The recusal order reads in its entirety:

> PURSUANT to 28 U.S.C. § 455(a), the undersigned judge, to whom **the above-styled cause** has been assigned, hereby recuses himself **from that cause** in the interest of justice and refers it to the Clerk of the Court for reassignment pursuant to Rule 3.6 of the Local Rules of the United States District Court for the Southern District of Florida.
>
> Accordingly, it is
>
> ORDERED AND ADJUDGED that the undersigned is recused from consideration **of this cause**. It is
>
> FURTHER ORDERED AND ADJUDGED that **this cause** is referred to the Clerk of the Court for permanent reassignment to another Judge in accordance with the blind assignment system.

. . . Thereafter, then-Acting Chief Judge Edward B. Davis entered a further recusal order, which reads in its entirety:

> PURSUANT to 28 U.S.C. § 455(a), the undersigned judge, as acting Chief Judge of the Southern District of Florida, hereby recuses all District Judges in the Southern District of Florida **from that cause** in the interest of justice.
>
> Accordingly, it is
>
> ORDERED AND ADJUDGED that all District Judges in the Southern District of Florida are recused from consideration **of this cause**.

Id. at 2 (quoting D.E. 277-1, p. 2; D.E. 281, p. 7) (emphasis in Order). Judge Ungaro

reasoned that:

> as is evident by the emphasized language above, the district-wide recusal order applied only to the alleged-assault case involving Judge Highsmith in 1993. The recusal order is not a perpetual blanket order; it does not apply to any and all causes involving this Defendant for all time. Therefore, there is no standing applicable recusal order to be enforced.

Id. at 4.

12

The defendant maintains that Judge Ungaro's Order (DE# 291) is factually and legally incorrect. See Response to Sur-Reply at 4. While the defendant may disagree with Judge Ungaro's Order (DE# 291), that Order (DE# 291) remains in effect. If the defendant seeks a reversal of Judge Ungaro's Order (DE# 291), he must seek that relief from the Eleventh Circuit.[11]

Because Judge Ungaro has already ruled that the judges of the Southern District of Florida are not recused from the instant case, the undersigned will not consider the defendant's argument that the seizure warrant signed by Magistrate Judge Turnoff is void because Magistrate Judge Turnoff was purportedly recused from the instant case.

The defendant is not entitled to the return of the $4,600 based on the fact that Magistrate Judge Turnoff was the judge who signed the seizure warrant.

## 3.    The Seizure Warrant was Properly Executed

The defendant argues that the seizure warrant was improperly executed. The defendant notes that the seizure warrant did not provide for an open-ended seizure. See Response to Government[']s Post Evidentiary Hearing Filing DE 560 Before the Honorable Magistrate Judge O'Sullivan re: Forfeiture (DE# 563 at 2, 11/12/19). The defendant further states that if the government sought the seizure of funds deposited after the seizure warrant was executed, the government should have obtained another warrant. Response to Sur-Reply at 2. Thus, according to the defendant, any money deposited after the seizure warrant was served on December 7, 2017 was not subject to

---

[11] The defendant's Response to Sur-Reply indicates that the defendant intends to address the Court Order (DE# 291) denying recusal on appeal. Response to Sur-Reply at 7.

seizure. Reply at 1.

The government argues that there was only one seizure of Account 6006. The government notes that the seizure warrant was served on December 7, 2017 and processed by Bank of America approximately three weeks later on December 28, 2017. Bench Memorandum at 4. Thus, the seizure of the funds in Account 6006 was all part of the execution of the same seizure warrant. Id.

The undersigned finds that the $4,600 was properly seized as part of the same seizure warrant. In United States v. $25,846.96 & $6,000.00 Seized from Bank of Vernon Account No. XXX-XX-6206, government agents executed a seizure warrant at a bank. 928 F. Supp. 2d 1296, 1301 (N.D. Ala. 2013). The bank provided the agents with a check for $25,846.96 and advised the agents that the claimant "had deposits on his account that had not yet cleared." After these deposits cleared, the bank sent the government $6,000. The district court determined that:

> [i]t was entirely reasonable for the Government to wait and receive these funds separately because it would be impossible for the Government to seize the $6,000.00 at the same time they seized the $25,846.96 from the Bank Account. There was no second seizure of the $6,000.00 as Claimant contends. Rather, there was a single, continuous seizure of the Defendant Funds, and the $6,000.00 does not need to be returned to Claimant for lack of a warrant.

Id.

In the instant case, the government served the seizure warrant on Bank of America on December 7, 2017. A few days later, the defendant's father returned the $4,600 cashier's check to the bank and the bank credited the money to the account on December 12, 2017. On or about December 28, 2017, the bank provided the government with a check in the amount of $6,893.46. The $6,893.46 check (which

14

included the $4,600) was provided to the government in response to the seizure warrant. The fact that the bank did not tender a check immediately and instead took several weeks to process the seizure warrant does not render the seizure of the $6,893.46 (which included the $4,600) improper.

The seizure warrant was properly executed and the defendant cannot successfully challenge the seizure of the $4,600 on this ground.

### 4.    The Defendant is Not Entitled to the Return of the $4,600

#### a.    The Funds in Account 6006 Were Subject to Forfeiture as Property Involved in the Money Laundering Offense

The defendant argues that the funds in Account 6006 were lawful and not part of the conspiracy. Response to Sur-Reply at 2. Specifically, the defendant argues that the funds did not belong to the conspiracy because they "materialized" after the conspiracy had ended. See Response to Government[']s Post Evidentiary Hearing Filing DE 560 Before the Honorable Magistrate Judge O'Sullivan re: Forfeiture (DE# 563 at 2, 11/12/19). The defendant notes that numerous documents allege that the conspiracy ended on October 19, 2019, months before the funds were "illegally seized" from Account 6006. Id.[12] The $4,600 is subject to seizure because it was deposited into an

---

[12] The defendant insists that the conspiracy ended on October 17 or 19, 2017. See Evidentiary Hearing Transcript (DE# 579 at 1/14/20). There were two conspiracies alleged in the original indictment: a drug conspiracy and a money laundering conspiracy. The time frame alleged in the initial indictment for the drug conspiracy was "[b]eginning at least as early as in or around January 3, 2017, through on or about October 19, 2017." Indictment (DE# 14 at 1, 12/20/17). The timeframe alleged in the indictment for the money laundering conspiracy was "[b]eginning at least as early as on or around January 3, 2017, and continuing until the return of this Indictment." Id. at 2. The indictment was returned on December 19, 2017. Bank of America credited the $4,600 cashier's check to Account 6006 on December 12, 2017. In any event and for the reasons stated herein, the undersigned finds that the $4,600 were properly forfeited

account used by the defendant as part of his money laundering scheme. Thus, while the $4,600 were "clean funds" loaned to the defendant by the defendant's father, they were still subject to forfeiture by the government.

In <u>United States v. Puche</u>, 350 F.3d 1137, 1141 (11th Cir. 2003), the defendants were convicted of conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(a)(3) & (h). On appeal, the defendants argued that the forfeiture order should not have included $1,606,318.60 in "legitimate funds." <u>Id.</u> at 1153. The Eleventh Circuit determined that the money was properly included in the forfeiture order because the defendants had used legitimate funds to disguise their criminal activity:

> [the corporate bank] accounts were not a mere pooling of funds, but were an arrangement through which tainted funds could be transferred overseas . . . . Faced with the evidence that the funds, both legitimate and illegitimate, were rapidly moved into bank accounts in order to conceal the nature and source of the narcotics proceeds, the jury could have inferred that the legitimate proceeds facilitated the illegal proceeds by acting as a "cover" and hence reduced suspicion of the latter's source.

<u>Id.</u> at 1153-54. The Eleventh Circuit explained that:

> the mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture. **Forfeiture of commingled funds, however, is proper when the government demonstrates that the defendant pooled the funds to facilitate or "disguise" his illegal scheme**.

Id. at 1153 (emphasis added).

Similarly here, although Account 6006 contained some legitimate funds, including money loaned to the defendant by the defendant's father, the record

---

as property involved in the money laundering offense.

16

evidence, including the defendant's guilty plea and the Court's Preliminary Order

of Forfeiture (DE# 450, 6/11/19), conclusively establishes that the defendant

used Account 6006 and other bank accounts to facilitate or disguise his criminal

activity. In his affidavit, Special Agent Giroux explained that the defendant moved

funds through various accounts, including Account 6006, to conceal or disguise

the nature of the accounts:

> A review of the bank accounts shows a significant number of transfers
> between and among all of the target[ ] accounts. **There does not seem to
> be any legitimate business or other reason for the movement of
> money in this way. The purpose of these transactions appears to be
> to conceal or disguise the nature, location, source, ownership, or
> control of the Target Accounts**. . . .

Seizure Warrant Affidavit at ¶24 (emphasis added). Thus, as in <u>Puche</u>, the funds

in Account 6006 (including the $4,600) were properly forfeited.

### b.   The Defendant Does Not Have Clean Hands

The government argues that the Motion should be denied because the defendant

does not have clean hands. Sur-Reply at 2. The government notes that motions for the

return of property are governed by Fed. R. Crim. P. 41(g) and require clean hands.

Bench Memo at 2. The government states that the defendant cannot show clean hands

because the Court has already determined that the funds in Account 6006 were

involved in the offenses for which the defendant pled guilty and the defendant admitted

to engaging in money laundering as part of that guilty plea. <u>Id.</u> at 3. The government

further notes that "[t]he presence of funds unrelated to the criminal activity does not

change the fact that the [$4,600] are subject to forfeiture" because clean funds are often

intermingled with funds involved in criminal activity to avoid detection. <u>Id.</u> at 3-4.

17

Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). To invoke the Court's equity jurisdiction, an individual seeking the return of property must have clean hands. The Eleventh Circuit has stated that:

> A motion to return seized property under Fed.R.Crim.P. 41(g), is a motion in equity, in which courts will determine all the equitable considerations in order to make a fair and just decision. When an owner invokes Rule 41(g) after the close of all criminal proceedings, the court treats the motion for return of property as a civil action in equity.

United States v. Howell, 425 F.3d 971, 974 (11th Cir. 2005). In Howell, the Eleventh Circuit determined that a defendant who had pled guilty to conspiracy to distribute cocaine was not entitled to the return of $140,000 which consisted of government funds provided to the cooperating source to complete the narcotics sale. The Eleventh Circuit observed that "[t]he doctrine of 'unclean hands' is an equitable test that is used by courts in deciding equitable fate. The defendant in [Howell] ha[d] come into court with extremely 'unclean hands.' One engaged in this type of criminal conduct [was] hardly entitled to equitable relief." Id. at 974.

Similarly here, the defendant does not have clean hands. The undersigned makes this determination based on the Seizure Warrant Affidavit signed by Special Agent Giroux, which states in part that:

> A review of the bank accounts shows a significant number of transfers between and among all of the target[ ] accounts. **There does not seem to be any legitimate business or other reason for the movement of money in this way. The purpose of these transactions appears to be to conceal or disguise the nature, location, source, ownership, or control of the Target Accounts**. The transfers were constant, often more than one transfer per day.

Seizure Warrant Affidavit at ¶24 (emphasis added). Moreover, the undersigned notes

18

that the defendant pled guilty to all of the counts of the Superseding Indictment, which included both drug charges and money laundering charges. See Minute Entry (DE# 167, 8/20/18). Lastly, the Court has already determined that "the United States has established the requisite nexus between the Subject Accounts [which include Account 6006] and the offense to which the Defendant pleaded guilty." See Preliminary Order of Forfeiture (DE# 450 at 2, 6/11/19). Based on the foregoing, the record clearly establishes that the defendant does not have clean hands.

The Court should not use its equitable powers to grant the defendant relief under the circumstances of this case. "The decision to invoke equitable jurisdiction . . . must be exercised with caution and restraint." Matter of $67,470.00, 901 F.2d 1540, 1544 (11th Cir. 1990). The Eleventh Circuit has stated that "the decision to exercise equitable jurisdiction is highly discretionary and jurisdiction is generally appropriate only when the petitioner's conduct and the merits of his petition require judicial review to prevent manifest injustice." United States v. Zambrano, 353 F. App'x 227, 228 (11th Cir. 2009) (citation omitted); see also Matter of $67,470.00, 901 F.2d 1540, 1544 (11th Cir. 1990) (stating that equitable jurisdiction "is only appropriate in exceptional cases where equity demands intervention.").

In the instant case, the defendant was convicted of both narcotics offenses and money laundering. The Court has already determined that the defendant used Account 6006 in his illegal scheme. See Preliminary Order of Forfeiture (DE# 450 at 2, 6/11/19) (finding that "the United States has established the requisite nexus between the Subject Accounts [which include Account 6006] and the offense to which the Defendant pleaded

guilty."). The instant case is not one of those "exceptional cases" which merit the Court's exercise of equitable jurisdiction.

5.     **The Defendant's Father is Not Entitled to the Return of the $4,600**

At the outset, the undersigned notes that the defendant's father has not filed a third-party claim for the return of the $4,600. The defendant cannot make arguments on behalf of his father. A litigant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." U.S. Dep't of Labor v. Triplett, 494 U.S. 715, 720, 110 S. Ct. 1428, 1431, 108 L. Ed. 2d 701 (1990); see also United States v. Rivers, 60 F. Supp. 3d 1262, 1266 (M.D. Fla. 2014) (stating that "any objection Defendant . . . may have on the basis that a third party holds an interest in forfeitable property is not his objection to make."). In any event, the $4,600 should not be returned to the defendant's father. The defendant's father became an unsecured creditor when he loaned the $4,600 to the defendant. An unsecured creditor's interest in forfeited funds is not superior to the government's interest in those funds. United States v. Eldick, 223 F. App'x 837, 840 (11th Cir. 2007).

**RECOMMENDATION**

In accordance with the foregoing, the undersigned respectfully RECOMMENDS that the Motion for Return of Property (DE# 476, 6/26/19) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. **Any objections must be accompanied by a copy of the hearing transcript.** Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue

covered in the Report and shall bar the parties from attacking on appeal unobjected-to

factual and legal conclusions contained in this Report except upon grounds of plain

error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn,

474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-

1 (2016).

      RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida

this _____ day of January, 2020.

                         JOHN J. O'SULLIVAN
                         CHIEF UNITED STATES MAGISTRATE JUDGE

Copies mailed by Chambers to:
Danny Angel Rodriguez
48128-004
Lee-USP
United States Penitentiary
Inmate Mail/Parcels
Post Office Box 305
Jonesville, VA 24263